**BREEZY POINT COOPERATIVE, INC., Plaintiff,**

v.

**CIGNA PROPERTY AND CASUALTY COMPANY, Defendant.**

No. 91–CV–4846 (JRB).

United States District Court, E.D. New York.

Oct. 5, 1994.

34

James J. Harrington, New York City, for plaintiffs.

Michael E. Curan, Curan & Troy, P.C., New York City, for defendant.

### MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

The plaintiff Breezy Point Cooperative, Inc. ("Breezy Point") moves for an order precluding introduction and use at trial of testimony by defendant's proposed expert, Marvin Greenspan, Esq., and the transcript of a telephone conversation between one of defendant's employees and plaintiff's assistant general manager, recorded on or about August 8, 1991 (the "August 1991 Conversation"). For the reasons set forth below, the Court grants plaintiff's motion to preclude the testimony of defendant's expert, but denies that portion of the motion seeking to exclude the transcript of the August 1991 Conversation.

### BACKGROUND

Plaintiff Breezy Point initiated this declaratory judgment action seeking defense and indemnity coverage under two liability insurance policies issued to plaintiff by defendant CIGNA Property and Casualty Company ("CIGNA"). The policies at issue insure Breezy Point against claims of liability for

personal injuries occurring on its property. The first policy provided coverage for Breezy Point during the period from March 1, 1989 through March 1, 1990, and the second policy renewed the terms of the first, extending coverage through March 1, 1991. Both policies expressly require plaintiff to notify CIGNA "as soon as practicable of an 'occurrence' ... which may result in a claim." The policies specifically define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same, general harmful conditions."

On July 8, 1989, Breezy Point personnel discovered William Lang unconscious in the water near his boat, a short distance from the plaintiff's shoreline. Breezy Point did not notify CIGNA of the incident until August 9, 1991, more than two years later, when it forwarded to CIGNA copies of the summons and complaint in a state court personal injury action commenced by Lang against plaintiff on or about July 22, 1991 (the "Lang Action"). In September 1991, CIGNA issued to Breezy Point a notice of disclaimer, denying coverage and refusing to defend Breezy Point in the Lang Action on the basis that plaintiff's two-year delay in notifying CIGNA of the precipitating incident did not constitute timely notice under the terms of the applicable policy.

On July 4, 1990, Jason Sammut was injured off the shores of Breezy Point when he dove into the water from a structure owned by the United States Army. After receiving information that Sammut planned to institute a personal injury action naming Breezy Point as defendant, plaintiff first notified CIGNA of the incident and the likelihood of the Sammut suit on or about August 7, 1991. Sammut commenced a state court action on October 16, 1991 (the "Sammut Action"), at which time Breezy Point forwarded to CIGNA copies of the summons and complaint. On November 21, 1991, CIGNA issued to Breezy Point a notice of disclaimer, denying coverage and refusing to defend the Sammut Action on the basis that plaintiff's year-long delay in notifying CIGNA of the Sammut incident violated the terms of the applicable policy.

Breezy Point moved for partial summary judgment, seeking an order requiring CIGNA to defend the Sammut Action. CIGNA cross-moved, arguing that, as a matter of law, Breezy Point's untimely notices vitiated the applicable policies and thus relieved defendant of its duty to defend and indemnify plaintiff in both actions. In a decision dated January 13, 1993, the Honorable I. Leo Glasser denied the cross-motions, holding that whether Breezy Point reasonably believed that it was not liable for the Lang and Sammut injuries and whether any such good faith belief justified plaintiff's delay in notifying CIGNA raised issues of fact precluding summary judgment. Plaintiff now moves for an order excluding the August 1991 Conversation and precluding introduction of testimony by defendant's expert.

*DISCUSSION*

I. *Admissibility of Proposed Expert Testimony*

Plaintiff urges this Court to exclude the testimony of defendant's proposed expert, Marvin Greenspan, Esq., on the grounds that the proffered testimony impermissibly draws legal conclusions and invades the province of both the judge and jury. Plaintiff contends that defendant seeks improperly to have Mr. Greenspan testify that: any delay by Breezy Point in reporting the Lang and Sammut incidents was unreasonable; plaintiff's alleged failure to provide timely notice violated the terms of the insurance policies and Section 3420(a)(4) of the New York State Insurance Law; and Breezy Point has no reasonable excuse for its delay in notifying CIGNA.

This court "has broad discretion in the matter of admission or exclusion of expert evidence" such as that proffered by Mr. Greenspan. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). *Accord F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1257 (2d Cir.1987). Indeed, the Federal Rules of Evidence expressly vest within the sound discretion of the trial judge the decision of whether to admit expert testimony. Fed.R.Evid. 703.

Federal Rule of Evidence 702 permits introduction of testimony by experts regarding

"scientific, technical, or other specialized knowledge" that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Rule 704(a) allows introduction of testimony in the form of an opinion or inference even where it "embraces an ultimate issue to be decided by the trier of fact." However, the admission and use of expert opinion testimony does not go unchecked. As stated in the advisory committee's note to Rule 704:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances *against the admission of opinions which would merely tell the jury what result to reach....* They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria....

Fed.R.Evid. 704 advisory committee's note (emphasis added).

■ In keeping with the above principles, the law of this Circuit requires the "exclusion of expert testimony that expresses a legal conclusion." *See Hygh v. Jacobs,* 961 F.2d 359, 363 (2d Cir.1992) (and cases cited therein). Thus, an expert is prohibited from offering his opinion as to the legal obligations of parties under a contract, *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 508 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), drawing legal conclusions concerning whether a defendant's behavior violates statutory provisions, *Hygh,* 961 F.2d at 364, and offering "conclusions as to the legal significance of various facts adduced at trial." *Marx & Co.,* 550 F.2d at 510. These all remain questions to be determined solely by the finder of fact. Even if there exists no danger of misleading a jury "into adopting outright a legal conclusion proffered by an expert witness," testimony regarding applicable legal standards remains "objectionable by communicating a legal standard—explicit or implicit—to the jury." *Hygh,* 961 F.2d at 364. The function of informing the jury of the applicable law is reserved strictly for the court. *See F.H. Krear & Co.,* 810 F.2d at 1258.

■ The expert testimony defendant plans to introduce usurps the function of both the jury and this Court. Mr. Greenspan's proposed testimony that plaintiff's alleged failure to provide timely notice violated the terms of the insurance policies requires him to construe provisions of the insurance contract and thus contains inadmissible "legal opinions as to the meaning of the contract terms at issue." *Marx & Co.,* 550 F.2d at 509. Moreover, in testifying that any such delay violated Section 3420(a)(4) of the New York State Insurance Law, Mr. Greenspan necessarily will offer *his* version of what New York law requires or prohibits. Any discussion by Mr. Greenspan of the controlling legal principles clearly invades the Court's domain, as " '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.' " *F.H. Krear & Co.,* 810 F.2d at 1258 (quoting *Marx & Co.,* 550 F.2d at 509–10). Mr. Greenspan, however qualified as an attorney, "is not qualified to compete with the judge in the function of instructing the jury." *Hygh,* 961 F.2d at 364.

■ In addition, defendant apparently intends to have Mr. Greenspan testify that any delay by Breezy Point in reporting the Lang and Sammut incidents was unreasonable as a matter of law, and that plaintiff can assert no reasonable excuse for its delay in notifying CIGNA. This testimony undeniably requires Mr. Greenspan to draw impermissible legal conclusions, *Hygh,* 961 F.2d at 363, and evaluate the legal significance of facts adduced at trial, a function expressly reserved for the jury. *See Marx & Co.,* 550 F.2d at 510. For these reasons, the Court grants plaintiff's request to preclude introduction of Mr. Greenspan's expert testimony regarding the reasonableness of plaintiff's alleged delay in notifying CIGNA and the legal significance of any such delay.

## II. *Admissibility of Transcript*

Breezy Point also seeks to preclude introduction and use at trial of a transcript of the August 1991 Conversation between defendant's employee and plaintiff's assistant general manager. Breezy Point bases its motion to exclude the transcript on Rules 801(c), 901, 1002, and 1006 of the Federal Rules of Evidence, arguing that CIGNA never prop-

erly authenticated the transcript, the Best Evidence Rule (FRE 1002) prohibits introduction of anything but the actual tape recording of the August 1991 Conversation, and in any event, the subject conversation contains inadmissible hearsay.

 The Court holds that admission of the contents of the August 1991 Conversation does not violate the prohibition against hearsay. Federal Rule of Evidence 801(d)(2)(D) defines as admissible non-hearsay "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." The August 1991 Conversation contains statements made by Arthur Lighthall, the Assistant General Manager of plaintiff Breezy Point, in which he purports to quote plaintiff's General Manager, John Fallon. Because Lighthall's conversation relates statements originally uttered by Fallon, one of plaintiff's employees, concerning a matter within the scope of his agency or employment, the testimony is admissible at trial under Rule 801(d)(2)(D). Judge Glasser reached precisely this conclusion when the issue was raised on the cross-motions for summary judgment, and the Court here is in agreement. *See* Memorandum and Order, 91–CV–4846 (ILG), dated January 13, 1993, at p. 7 n. 3.

■ Because the defendant has offered to produce at trial the actual tape recording of the August 1991 Conversation, the Court need not address whether introduction of the transcript violates Federal Rule of Evidence 1002. Moreover, nothing in Rule 1002 prevents introduction of the transcript to aid the jury in following the recording if the original recording is available for the Court's inspection. *See* 4 *Wigmore on Evidence,* § 1190, p. 434 (Chadbourn rev. 1972). Of course, the defendant properly must authenticate the original recording and the transcript before introducing them at trial. To do so, defendant may use any of the traditional authentication methods listed in Rules 901 and 902. Accordingly, the Court holds that defendant may introduce into evidence the recording of the August 1991 Conversation and use at trial a properly authenticated transcript of the subject conversation to aid the jury in following the recording.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for an order precluding introduction of the proposed expert testimony hereby is GRANTED and the motion to exclude the statements contained in and the transcript of the August 1991 Conversation hereby is DENIED.

SO ORDERED.